IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


HUGO LEONEL CHALY-GARCIA,                    CV 04-582-BR

        Plaintiff,                           OPINION AND ORDER

v.

UNITED STATES OF AMERICA; JOHN
ASHCROFT, Attorney General of the
United States; and TOM RIDGE, Secretary
of Homeland Security of the United
States,

        Defendants.


**STEPHEN W. MANNING**
**JESSICA M. BOELL**
**JENNIFER M. ROTMAN**
Immigrant Law Group
P.O. Box 40103
Portland, OR  97240
(503) 241-0035

        Attorneys for Plaintiff


1 - OPINION AND ORDER

**KAREN J. IMMERGUT**
United States Attorney
**KELLY A. ZUSMAN**
Assistant United States Attorney
1000 S.W. Third Avenue
Suite 600
Portland, OR  97204-2902
(503) 727-1009

        Attorneys for Defendants


**BROWN, Judge.**

    This matter comes before the Court on Plaintiff's Motion for
Summary Judgment (#14) and Defendants' Motion for Summary
Judgment (#18).  For the following reasons, the Court **DENIES**
Plaintiff's Motion and **GRANTS** Defendants' Motion.


<u>**FACTUAL BACKGROUND**</u>

    The following facts are undisputed:

    On December 14, 1990, Defendant United States and the United
States Attorney General agreed to settle a class action in the
United States District Court for the Northern District of
California filed by numerous churches, organizations, and
individuals on behalf of approximately 300,000 asylum applicants
who alleged systematic violations of the Refugee Act of 1980
regarding the adjudication of Guatemalan and Salvadoran asylum
claims.  *See American Baptist Churches v. Thornburgh*, 760 F.
Supp. 796, 799-800 (N.D. Cal. 1991)(*ABC*).

    The California district court provisionally approved the

settlement on December 19, 1990, and approved a final settlement
on January 31, 1991.  The *ABC* Settlement Agreement entitled
members of the *ABC* class to heightened review procedures for
asylum applications.

On January 31, 1991, Plaintiff Hugo Leonel Chaly-Garcia, a
citizen of Guatemala, appeared in person at the Immigration and
Naturalization Service (INS)[1] office in Portland, Oregon.  He
orally informed an immigration officer that he intended to take
advantage of the "new asylum program for the Guatemalans."  In
response to his request, the INS provided him with a Form I-589
Request for Asylum.  Plaintiff completed the form, but he did not
indicate his intent to apply for status as an *ABC* claimant on the
form.

From November 26, 1992, through April 7, 1997, Defendants
suspended all action as to *ABC* claimants, including scheduling,
interviewing, processing, and adjudicating asylum forms.  Between
April 7, 1997, and some point in May 1997, Defendants recommenced
conducting interviews and adjudications of asylum applications by
*ABC* claimants.  In May 1997, Defendants again suspended all
action on *ABC* claimants' asylum applications.

On July 14, 2003, Tom Malia, an INS Asylum Officer,
conducted an interview with Plaintiff regarding Plaintiff's

---

[1] The INS is now Immigration and Customs Enforcement (ICE).
For continuity, however, the Court will continue to refer to the
agency as the INS in this Opinion and Order.

asylum application.  Before the interview, Malia checked

Defendants' *ABC* database and did not find any evidence that

Plaintiff had filed an INS registration card for *ABC* opt-in

status.  Malia questioned Plaintiff at his interview, and

Plaintiff confirmed he had not completed a registration card.

Malia concluded Plaintiff was not eligible for treatment as an

*ABC* claimant and, therefore, considered Plaintiff's application

and conducted Plaintiff's interview under current regulations

rather than under the heightened standards provided for in the

*ABC* Settlement Agreement.  On August 4, 2003, Defendants

instituted removal proceedings against Plaintiff.


### PROCEDURAL BACKGROUND

On April 9, 2004, Plaintiff filed a Complaint in this Court

in which he alleges:  (1) He properly tendered notice of his

intent to opt-in to the *ABC* Settlement Agreement, (2) he is

entitled to numerous procedural protections available to class

members under *ABC*, and (3) he is entitled to a stay of removal

proceedings.

On April 29, 2004, Plaintiff filed a Motion for a Temporary

Restraining Order seeking an order from the Court temporarily

restraining Defendants from conducting a final removal hearing.

On April 30, 2004, the parties informed the Court that Defendants

agreed to cancel Plaintiff's final removal hearing pending

resolution of this action.

On December 13, 2004, Plaintiff and Defendants filed cross-motions for summary judgment. Defendants contend Plaintiff failed to properly opt-in to the *ABC* Settlement Agreement, and, therefore, Plaintiff was not entitled to the heightened procedures provided for in the *ABC* Settlement Agreement. Plaintiff, however, contends he properly opted in, and, therefore, Defendants wrongly failed to consider his asylum application and to conduct his interview under the heightened procedures required by the *ABC* Settlement Agreement.

On March 25, 2005, the Court heard oral argument on the parties' cross-motions and thereafter took both Motions under advisement.

## STANDARDS

Fed. R. Civ. P. 56(c) authorizes summary judgment if no genuine issue exists regarding any material fact and the moving party is entitled to judgment as a matter of law. The moving party must show the absence of an issue of material fact. *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002). In response to a properly supported motion for summary judgment, the nonmoving party must go beyond the pleadings and show there is a genuine issue of material fact for trial. *Id*.

An issue of fact is genuine "'if the evidence is such that a

reasonable jury could return a verdict for the nonmoving party.'"
*Villiarmo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th
Cir. 2002)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,
248 (1986)).  The court must draw all reasonable inferences in
favor of the nonmoving party.  *Id*.  A mere disagreement about a
material issue of fact, however, does not preclude summary
judgment.  *Jackson v. Bank of Haw.*, 902 F.2d 1385, 1389 (9th Cir.
1990).  When the nonmoving party's claims are factually
implausible, that party must come forward with more persuasive
evidence than otherwise would be required.  *Blue Ridge Ins. Co.
v. Stanewich*, 142 F.3d 1145, 1147 (9th Cir. 1998)(citation
omitted).

    The substantive law governing a claim or a defense
determines whether a fact is material.  *Addisu v. Fred Meyer,
Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).  If the resolution of
a factual dispute would not affect the outcome of the claim, the
court may grant summary judgment.  *Arpin v. Santa Clara Valley
Transp. Agency*, 261 F.3d 912, 919 (9th Cir. 2001).


**<u>DISCUSSION</u>**

    At the hearing, Plaintiff conceded the language of the *ABC*
Settlement Agreement required Plaintiff to notify the INS in
writing that he sought *ABC* claimant status, and, therefore,
Plaintiff's oral statement to the INS that he wished to take

advantage of "the new asylum program for Guatemalans" was not
sufficient notice under the *ABC* Settlement Agreement.

Defendant conceded Plaintiff was not required to complete a
specific registration form to properly notify the INS of his
intent to seek *ABC* claimant status.  Defendant also agreed, for
purposes of this case only, Plaintiff's attempt to notify the INS
that he intended to opt-in to the *ABC* Settlement Agreement prior
to July 1, 1991, as required by the Agreement, was not fatal to
his attempt to opt-in.

Finally, the parties agree the language of paragraph two of
the *ABC* Settlement Agreement is unambiguous, and, therefore, the
Court need not examine extrinsic evidence to determine its
meaning.  The Court agrees.

**I.    Pertinent *ABC* Settlement Agreement Provisions**

Paragraph 2 of the *ABC* Settlement Agreement provides in
pertinent part:

> The following class members, if they have not been
> convicted of an aggravated felony . . . will be
> afforded a de novo, unappealable asylum
> adjudication before an Asylum Officer, including a
> new interview, under the regulations in effect on
> October 1, 1990:
>
> * * *
>
> b. Guatemalans who indicate to the INS in
> writing their intent to apply for a de novo asylum
> adjudication before an Asylum Officer, or
> otherwise to receive the benefits of this
> agreement, within the period of time commencing
> July 1, 1991 and ending on December 31, 1991.

*ABC*, 760 F. Supp. at 799-800.  Plaintiff has not been convicted of an aggravated felony.

The *ABC* Settlement Agreement also requires various forms of notice to class members regarding the necessity to opt-in to the *ABC* class.  For example, the *ABC* Settlement Agreement requires notice by publication for class members entitled to benefits under the Agreement who were not "specifically entitled to personal notice either by personal service or by first-class mail." *Id*. at 800.  The parties agree Plaintiff was not entitled to personal notice.

The *ABC* Settlement Agreement also requires the following notice to be posted in INS offices:

> Because of a lawsuit, American Baptist Churches v. Thornburgh, you can receive a new asylum interview and decision.
>
> THIS APPLICATION IS NOT AN "AMNESTY" APPLICATION AND THERE MAY BE RISKS IN APPLYING. IF YOU BELIEVE YOU QUALIFY AND WISH ADVICE, CONTACT YOUR LAWYER OR CALL 1-800-XXX-XXXX FOR FREE ADVICE.
>
> WHO CAN APPLY:
>
> Almost any Guatemalan who:
> --has been in the United States as of October 1, 1990
> and
> --has a fear of persecution if returned to Guatemala
>
> TIME TO APPLY:
> --Speak to a lawyer before you apply if you wish legal advice.
> --You must apply BEFORE December 31, 1991.
> **IF YOU DO NOT APPLY BEFORE DECEMBER 31, 1991, YOU WILL NOT RECEIVE A NEW ASYLUM INTERVIEW.**

--If you have not submitted an asylum application, you must do so BEFORE March 31, 1992.

*Id*. at 821 (emphasis in original).

The *ABC* Settlement Agreement also requires the following notices to be placed in newspapers:

**TO: All Guatemalans who have been in the United States as of October 1, 1990:**

THIS AD HAS IMPORTANT INFORMATION ABOUT YOUR LEGAL RIGHTS. READ IT CAREFULLY.

Because of a lawsuit, American Baptist Churches v. Thornburgh, you can receive a new asylum interview and decision.

THIS APPLICATION IS NOT AN "AMNESTY" APPLICATION AND THERE MAY BE RISKS IN APPLYING. IF YOU BELIEVE YOU QUALIFY AND YOU WISH ADVICE, CONTACT YOUR LAWYER OR CALL 1-800-XXX-XXXX for FREE ADVICE.

You must apply before December 31, 1991.

WHO CAN APPLY:

Almost any Guatemalan who
--has been in the United States as of October 1, 1990
and
--has a fear of persecution if returned to Guatemala.

HOW TO APPLY:
--Speak to a lawyer BEFORE you apply if you wish legal advice.
--Go to a local voluntary agency for information or to INS to obtain the necessary forms.
--Return the forms to INS before December 31, 1991.

TIME TO APPLY:
--If you do not apply before December 31, 1991, you will not receive a new asylum interview.

*Id.* at 829 (emphasis in original).

The *ABC* Settlement Agreement also provides information regarding the time for filing asylum applications by class members entitled to only public notice: "[T]he opportunity to seek a *de novo* asylum adjudication shall remain open until December 31, 1991. Guatemalans who timely indicate their intent may submit any new application for asylum for consideration by an Asylum Officer by no later than March 31, 1992." *Id.* at 802.

Finally, the *ABC* Settlement Agreement addresses potential class members' failure to comply with filing requirements: "Failure to . . . timely file the asylum application if no application is already on file will render class members ineligible for any relief set forth in this settlement agreement." *Id.*

## II. Interpretation of the Pertinent *ABC* Settlement Agreement Provisions

### A. Contract Interpretation Rules

"An agreement to settle a legal dispute is a contract and its enforceability is governed by familiar principles of contract law." *Jeff D. v. Andrus*, 889 F.2d 753, 759 (9th Cir. 1990). *See also United Commercial Ins. Serv., Inc. v. Paymaster Corp.*, 962 F.2d 853, 856 (9th Cir. 1992)("A settlement contract is treated as any other contract for purposes of interpretation."). If the United States is a party to a settlement agreement, federal law controls. *Westlands Water*

*Dist. v. United States*, 337 F.3d 1092, 1100 (9th Cir. 2003).

When interpreting the provisions of a contract, the court must first look to the text of the contract to determine whether the language is ambiguous. *O'Neill v. United States*, 50 F.3d 677, 682 (9th Cir. 1995). The terms of a contract should "be given their ordinary meaning," and "the plain language of the contract should be considered first." *Klamath Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206, 1210 (9th Cir. 2000).

"The language of a contract is ambiguous if a section of that contract is subject to reasonable alternative interpretations." *Funeral Fin. Sys. v. United States*, 243 F.3d 1015, 1018 (7th Cir. 2000). Finally, "under federal common law a contract should be interpreted as to give meaning to all of its terms – presuming that every provision was intended to accomplish some purpose, and that none are deemed superfluous." *Harris v. The Epoch Group, L.C.*, 357 F.3d 822, 825 (8th Cir. 2004) (citations omitted).

Whether contract language is ambiguous is a question of law for the court. *Petro-Ventures, Inc. v. Takessian*, 967 F.2d 1337, 1340 (9th Cir. 1992). If the court finds contract language is unambiguous, the court may not examine contradictory extrinsic evidence. Extrinsic evidence may be used only to explain or to supplement the contract. *Westlands Water Dist.*, 337 F.3d at

1101.

**B.    Application of Contract Interpretation Rules to the *ABC* Settlement Agreement**

The parties contend the language of the *ABC* Settlement Agreement is unambiguous, and, therefore, the Court may not examine extrinsic evidence.

The Court agrees with the parties that the phrase "Guatemalans who indicate to the INS in writing their intent to apply for a de novo asylum adjudication before an Asylum Officer, or otherwise to receive the benefits of this agreement" plainly means "Guatemalans who intend to opt-in to the *ABC* Settlement Agreement must inform the INS in writing of their intent."

Here Plaintiff contends his application for asylum was sufficient to provide the INS with notice of his intent to opt-in to the *ABC* settlement.  As Defendants note, however, Plaintiff did not state on his application that he intended to opt-in to the *ABC* settlement or that he wished to take advantage of the "new asylum program for the Guatemalans."  In other words, there was not any way for an INS official reading Plaintiff's application to know that Plaintiff intended to opt-in to the *ABC* settlement.

Plaintiff contends the fact that he filed an application for asylum after the *ABC* Settlement Agreement was publicized and before December 31, 1991, was sufficient notice to the INS that he intended to opt-in to the *ABC* settlement.

Plaintiff's interpretation of the sufficiency of notice, however, would mean any Guatemalan who filed an application for asylum between the time the *ABC* Settlement Agreement was publicized and December 31, 1991, would be included in the *ABC* class regardless whether he intended to be included. The Court must "interpret[] [the *ABC* Settlement Agreement so] as to give meaning to all of its terms – presuming that every provision was intended to accomplish some purpose, and that none are deemed superfluous." *Harris*, 357 F.3d at 825. The Court finds any interpretation of the *ABC* Settlement Agreement that ignores the requirement of notice of intent would be erroneous.

In addition, the parties to the *ABC* Settlement Agreement specifically structured the Agreement to require Guatemalans to opt-in if they wished to receive the benefits of the Agreement. If this Court were to find that any application filed by a Guatemalan before December 31, 1991, was sufficient to provide notice to the INS of an intent to opt-in to the *ABC* settlement, the Court improperly would be converting the opt-in configuration of the *ABC* Settlement Agreement to an opt-out paradigm.

The Court, therefore, concludes Plaintiff's asylum application, which did not include any written statement indicating his desire to opt-in to the *ABC* settlement, does not satisfy the notice-of-intent requirement of the *ABC* Settlement Agreement. Because Plaintiff concedes he did not provide any

other written notice to the INS of his intent to opt-in to the *ABC* Settlement, the Court also concludes Plaintiff did not opt-in to the *ABC* settlement.

Accordingly, the Court grants Defendants' Motion for Summary Judgment on the ground that Plaintiff was not a member of the *ABC* class and, therefore, he was not entitled to the review and processing of his asylum application under the heightened standards of the *ABC* Settlement Agreement.

## CONCLUSION

For these reasons, the Court **GRANTS** Defendants' Motion for Summary Judgment (#18) and **DENIES** Plaintiff's Motion for Summary Judgment(#14).

IT IS SO ORDERED.

DATED this 17th day of June, 2005.

/s/ Anna J. Brown

_____
ANNA J. BROWN
United States District Judge

Chaly-Garcia CV 04-582 06-17-05.wpd

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


HUGO LEONEL CHALY-GARCIA,                    CV 04-582-BR

           Plaintiff,                        OPINION AND ORDER

v.

UNITED STATES OF AMERICA; JOHN
ASHCROFT, Attorney General of the
United States; and TOM RIDGE, Secretary
of Homeland Security of the United
States,

           Defendants.


**STEPHEN W. MANNING**
**JESSICA M. BOELL**
**JENNIFER M. ROTMAN**
Immigrant Law Group
P.O. Box 40103
Portland, OR  97240
(503) 241-0035

           Attorneys for Plaintiff


1 - OPINION AND ORDER

**KAREN J. IMMERGUT**
United States Attorney
**KELLY A. ZUSMAN**
Assistant United States Attorney
1000 S.W. Third Avenue
Suite 600
Portland, OR  97204-2902
(503) 727-1009

        Attorneys for Defendants

**BROWN, Judge.**

        This matter comes before the Court on Plaintiff's Motion for
Summary Judgment (#14) and Defendants' Motion for Summary
Judgment (#18).  For the following reasons, the Court **DENIES**
Plaintiff's Motion and **GRANTS** Defendants' Motion.


                    **FACTUAL BACKGROUND**

        The following facts are undisputed:

        On December 14, 1990, Defendant United States and the United
States Attorney General agreed to settle a class action in the
United States District Court for the Northern District of
California filed by numerous churches, organizations, and
individuals on behalf of approximately 300,000 asylum applicants
who alleged systematic violations of the Refugee Act of 1980
regarding the adjudication of Guatemalan and Salvadoran asylum
claims.  *See American Baptist Churches v. Thornburgh*, 760 F.
Supp. 796, 799-800 (N.D. Cal. 1991)(*ABC*).

        The California district court provisionally approved the

2 - OPINION AND ORDER

settlement on December 19, 1990, and approved a final settlement on January 31, 1991. The *ABC* Settlement Agreement entitled members of the *ABC* class to heightened review procedures for asylum applications.

On January 31, 1991, Plaintiff Hugo Leonel Chaly-Garcia, a citizen of Guatemala, appeared in person at the Immigration and Naturalization Service (INS)[1] office in Portland, Oregon. He orally informed an immigration officer that he intended to take advantage of the "new asylum program for the Guatemalans." In response to his request, the INS provided him with a Form I-589 Request for Asylum. Plaintiff completed the form, but he did not indicate his intent to apply for status as an *ABC* claimant on the form.

From November 26, 1992, through April 7, 1997, Defendants suspended all action as to *ABC* claimants, including scheduling, interviewing, processing, and adjudicating asylum forms. Between April 7, 1997, and some point in May 1997, Defendants recommenced conducting interviews and adjudications of asylum applications by *ABC* claimants. In May 1997, Defendants again suspended all action on *ABC* claimants' asylum applications.

On July 14, 2003, Tom Malia, an INS Asylum Officer, conducted an interview with Plaintiff regarding Plaintiff's

---

[1] The INS is now Immigration and Customs Enforcement (ICE). For continuity, however, the Court will continue to refer to the agency as the INS in this Opinion and Order.

asylum application.  Before the interview, Malia checked

Defendants' *ABC* database and did not find any evidence that

Plaintiff had filed an INS registration card for *ABC* opt-in

status.  Malia questioned Plaintiff at his interview, and

Plaintiff confirmed he had not completed a registration card.

Malia concluded Plaintiff was not eligible for treatment as an

*ABC* claimant and, therefore, considered Plaintiff's application

and conducted Plaintiff's interview under current regulations

rather than under the heightened standards provided for in the

*ABC* Settlement Agreement.  On August 4, 2003, Defendants

instituted removal proceedings against Plaintiff.


## PROCEDURAL BACKGROUND

On April 9, 2004, Plaintiff filed a Complaint in this Court

in which he alleges:  (1) He properly tendered notice of his

intent to opt-in to the *ABC* Settlement Agreement, (2) he is

entitled to numerous procedural protections available to class

members under *ABC*, and (3) he is entitled to a stay of removal

proceedings.

On April 29, 2004, Plaintiff filed a Motion for a Temporary

Restraining Order seeking an order from the Court temporarily

restraining Defendants from conducting a final removal hearing.

On April 30, 2004, the parties informed the Court that Defendants

agreed to cancel Plaintiff's final removal hearing pending

resolution of this action.

On December 13, 2004, Plaintiff and Defendants filed cross-motions for summary judgment. Defendants contend Plaintiff failed to properly opt-in to the *ABC* Settlement Agreement, and, therefore, Plaintiff was not entitled to the heightened procedures provided for in the *ABC* Settlement Agreement. Plaintiff, however, contends he properly opted in, and, therefore, Defendants wrongly failed to consider his asylum application and to conduct his interview under the heightened procedures required by the *ABC* Settlement Agreement.

On March 25, 2005, the Court heard oral argument on the parties' cross-motions and thereafter took both Motions under advisement.

## **STANDARDS**

Fed. R. Civ. P. 56(c) authorizes summary judgment if no genuine issue exists regarding any material fact and the moving party is entitled to judgment as a matter of law. The moving party must show the absence of an issue of material fact. *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002). In response to a properly supported motion for summary judgment, the nonmoving party must go beyond the pleadings and show there is a genuine issue of material fact for trial. *Id*.

An issue of fact is genuine "'if the evidence is such that a

reasonable jury could return a verdict for the nonmoving party.'" *Villiarmo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The court must draw all reasonable inferences in favor of the nonmoving party. *Id.* A mere disagreement about a material issue of fact, however, does not preclude summary judgment. *Jackson v. Bank of Haw.*, 902 F.2d 1385, 1389 (9th Cir. 1990). When the nonmoving party's claims are factually implausible, that party must come forward with more persuasive evidence than otherwise would be required. *Blue Ridge Ins. Co. v. Stanewich*, 142 F.3d 1145, 1147 (9th Cir. 1998)(citation omitted).

The substantive law governing a claim or a defense determines whether a fact is material. *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000). If the resolution of a factual dispute would not affect the outcome of the claim, the court may grant summary judgment. *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir. 2001).


**DISCUSSION**

At the hearing, Plaintiff conceded the language of the *ABC* Settlement Agreement required Plaintiff to notify the INS in writing that he sought *ABC* claimant status, and, therefore, Plaintiff's oral statement to the INS that he wished to take

advantage of "the new asylum program for Guatemalans" was not
sufficient notice under the *ABC* Settlement Agreement.

Defendant conceded Plaintiff was not required to complete a
specific registration form to properly notify the INS of his
intent to seek *ABC* claimant status.  Defendant also agreed, for
purposes of this case only, Plaintiff's attempt to notify the INS
that he intended to opt-in to the *ABC* Settlement Agreement prior
to July 1, 1991, as required by the Agreement, was not fatal to
his attempt to opt-in.

Finally, the parties agree the language of paragraph two of
the *ABC* Settlement Agreement is unambiguous, and, therefore, the
Court need not examine extrinsic evidence to determine its
meaning.  The Court agrees.

## I.    Pertinent *ABC* Settlement Agreement Provisions

Paragraph 2 of the *ABC* Settlement Agreement provides in
pertinent part:

> The following class members, if they have not been
> convicted of an aggravated felony . . . will be
> afforded a de novo, unappealable asylum
> adjudication before an Asylum Officer, including a
> new interview, under the regulations in effect on
> October 1, 1990:
>
>                             * * *
>
> b. Guatemalans who indicate to the INS in
> writing their intent to apply for a de novo asylum
> adjudication before an Asylum Officer, or
> otherwise to receive the benefits of this
> agreement, within the period of time commencing
> July 1, 1991 and ending on December 31, 1991.

*ABC*, 760 F. Supp. at 799-800.  Plaintiff has not been convicted of an aggravated felony.

The *ABC* Settlement Agreement also requires various forms of notice to class members regarding the necessity to opt-in to the *ABC* class.  For example, the *ABC* Settlement Agreement requires notice by publication for class members entitled to benefits under the Agreement who were not "specifically entitled to personal notice either by personal service or by first-class mail."  *Id*. at 800.  The parties agree Plaintiff was not entitled to personal notice.

The *ABC* Settlement Agreement also requires the following notice to be posted in INS offices:

> Because of a lawsuit, American Baptist Churches v.
> Thornburgh, you can receive a new asylum interview
> and decision.
>
> THIS APPLICATION IS NOT AN "AMNESTY" APPLICATION
> AND THERE MAY BE RISKS IN APPLYING. IF YOU BELIEVE
> YOU QUALIFY AND WISH ADVICE, CONTACT YOUR LAWYER
> OR CALL 1-800-XXX-XXXX FOR FREE ADVICE.
>
> WHO CAN APPLY:
>
> Almost any Guatemalan who:
> --has been in the United States as of October 1,
> 1990
> and
> --has a fear of persecution if returned to
> Guatemala
>
> TIME TO APPLY:
> --Speak to a lawyer before you apply if you wish
> legal advice.
> --You must apply BEFORE December 31, 1991.
> **IF YOU DO NOT APPLY BEFORE DECEMBER 31, 1991, YOU
> WILL NOT RECEIVE A NEW ASYLUM INTERVIEW.**

--If you have not submitted an asylum application, you must do so BEFORE March 31, 1992.

*Id.* at 821 (emphasis in original).

The *ABC* Settlement Agreement also requires the following notices to be placed in newspapers:

**TO: All Guatemalans who have been in the United States as of October 1, 1990:**

THIS AD HAS IMPORTANT INFORMATION ABOUT YOUR LEGAL RIGHTS. READ IT CAREFULLY.

Because of a lawsuit, American Baptist Churches v. Thornburgh, you can receive a new asylum interview and decision.

THIS APPLICATION IS NOT AN "AMNESTY" APPLICATION AND THERE MAY BE RISKS IN APPLYING. IF YOU BELIEVE YOU QUALIFY AND YOU WISH ADVICE, CONTACT YOUR LAWYER OR CALL 1-800-XXX-XXXX for FREE ADVICE.

You must apply before December 31, 1991.

WHO CAN APPLY:

Almost any Guatemalan who
--has been in the United States as of October 1, 1990
and
--has a fear of persecution if returned to Guatemala.

HOW TO APPLY:
--Speak to a lawyer BEFORE you apply if you wish legal advice.
--Go to a local voluntary agency for information or to INS to obtain the necessary forms.
--Return the forms to INS before December 31, 1991.

TIME TO APPLY:
--If you do not apply before December 31, 1991, you will not receive a new asylum interview.

*Id.* at 829 (emphasis in original).

The *ABC* Settlement Agreement also provides information regarding the time for filing asylum applications by class members entitled to only public notice: "[T]he opportunity to seek a *de novo* asylum adjudication shall remain open until December 31, 1991. Guatemalans who timely indicate their intent may submit any new application for asylum for consideration by an Asylum Officer by no later than March 31, 1992." *Id.* at 802.

Finally, the *ABC* Settlement Agreement addresses potential class members' failure to comply with filing requirements: "Failure to . . . timely file the asylum application if no application is already on file will render class members ineligible for any relief set forth in this settlement agreement." *Id.*

## II.  Interpretation of the Pertinent *ABC* Settlement Agreement Provisions

### A.   Contract Interpretation Rules

"An agreement to settle a legal dispute is a contract and its enforceability is governed by familiar principles of contract law." *Jeff D. v. Andrus*, 889 F.2d 753, 759 (9th Cir. 1990). *See also United Commercial Ins. Serv., Inc. v. Paymaster Corp.*, 962 F.2d 853, 856 (9th Cir. 1992)("A settlement contract is treated as any other contract for purposes of interpretation."). If the United States is a party to a settlement agreement, federal law controls. *Westlands Water*

*Dist. v. United States*, 337 F.3d 1092, 1100 (9ᵗʰ Cir. 2003).

When interpreting the provisions of a contract, the court must first look to the text of the contract to determine whether the language is ambiguous. *O'Neill v. United States*, 50 F.3d 677, 682 (9ᵗʰ Cir. 1995). The terms of a contract should "be given their ordinary meaning," and "the plain language of the contract should be considered first." *Klamath Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206, 1210 (9ᵗʰ Cir. 2000).

"The language of a contract is ambiguous if a section of that contract is subject to reasonable alternative interpretations." *Funeral Fin. Sys. v. United States*, 243 F.3d 1015, 1018 (7ᵗʰ Cir. 2000). Finally, "under federal common law a contract should be interpreted as to give meaning to all of its terms – presuming that every provision was intended to accomplish some purpose, and that none are deemed superfluous." *Harris v. The Epoch Group, L.C.*, 357 F.3d 822, 825 (8ᵗʰ Cir. 2004) (citations omitted).

Whether contract language is ambiguous is a question of law for the court. *Petro-Ventures, Inc. v. Takessian*, 967 F.2d 1337, 1340 (9ᵗʰ Cir. 1992). If the court finds contract language is unambiguous, the court may not examine contradictory extrinsic evidence. Extrinsic evidence may be used only to explain or to supplement the contract. *Westlands Water Dist.*, 337 F.3d at

1101.

**B. Application of Contract Interpretation Rules to the *ABC* Settlement Agreement**

The parties contend the language of the *ABC* Settlement Agreement is unambiguous, and, therefore, the Court may not examine extrinsic evidence.

The Court agrees with the parties that the phrase "Guatemalans who indicate to the INS in writing their intent to apply for a de novo asylum adjudication before an Asylum Officer, or otherwise to receive the benefits of this agreement" plainly means "Guatemalans who intend to opt-in to the *ABC* Settlement Agreement must inform the INS in writing of their intent."

Here Plaintiff contends his application for asylum was sufficient to provide the INS with notice of his intent to opt-in to the *ABC* settlement. As Defendants note, however, Plaintiff did not state on his application that he intended to opt-in to the *ABC* settlement or that he wished to take advantage of the "new asylum program for the Guatemalans." In other words, there was not any way for an INS official reading Plaintiff's application to know that Plaintiff intended to opt-in to the *ABC* settlement.

Plaintiff contends the fact that he filed an application for asylum after the *ABC* Settlement Agreement was publicized and before December 31, 1991, was sufficient notice to the INS that he intended to opt-in to the *ABC* settlement.

12 - OPINION AND ORDER

Plaintiff's interpretation of the sufficiency of notice, however, would mean any Guatemalan who filed an application for asylum between the time the *ABC* Settlement Agreement was publicized and December 31, 1991, would be included in the *ABC* class regardless whether he intended to be included. The Court must "interpret[] [the *ABC* Settlement Agreement so] as to give meaning to all of its terms – presuming that every provision was intended to accomplish some purpose, and that none are deemed superfluous." *Harris*, 357 F.3d at 825. The Court finds any interpretation of the *ABC* Settlement Agreement that ignores the requirement of notice of intent would be erroneous.

In addition, the parties to the *ABC* Settlement Agreement specifically structured the Agreement to require Guatemalans to opt-in if they wished to receive the benefits of the Agreement. If this Court were to find that any application filed by a Guatemalan before December 31, 1991, was sufficient to provide notice to the INS of an intent to opt-in to the *ABC* settlement, the Court improperly would be converting the opt-in configuration of the *ABC* Settlement Agreement to an opt-out paradigm.

The Court, therefore, concludes Plaintiff's asylum application, which did not include any written statement indicating his desire to opt-in to the *ABC* settlement, does not satisfy the notice-of-intent requirement of the *ABC* Settlement Agreement. Because Plaintiff concedes he did not provide any

other written notice to the INS of his intent to opt-in to the *ABC* Settlement, the Court also concludes Plaintiff did not opt-in to the *ABC* settlement.

Accordingly, the Court grants Defendants' Motion for Summary Judgment on the ground that Plaintiff was not a member of the *ABC* class and, therefore, he was not entitled to the review and processing of his asylum application under the heightened standards of the *ABC* Settlement Agreement.

## <u>CONCLUSION</u>

For these reasons, the Court **GRANTS** Defendants' Motion for Summary Judgment (#18) and **DENIES** Plaintiff's Motion for Summary Judgment(#14).

IT IS SO ORDERED.

DATED this 17th day of June, 2005.


/s/ Anna J. Brown

_____
ANNA J. BROWN
United States District Judge

*Chaly-Garcia CV 04-582 06-17-05.wpd*

15 - OPINION AND ORDER